IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SALVADOR SANCHEZ,

                 OPINION AND ORDER

        Plaintiff,

                 19-cv-195-bbc

    v.

ANDREW HUBER, SETH WANTY
and PAULINE HULSTEIN,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff Salvador Sanchez, who was previously incarcerated at the Jackson Correctional Institution, is proceeding on Eighth Amendment and state law negligence claims that defendants Andrew Huber and Seth Wanty failed to insure that plaintiff received his medication, despite knowing that he would suffer adverse effects if he did not receive it, and a state law negligence claim that defendant Pauline Hulstein refused to let him see a doctor or send him for regular stitches for a head laceration. Before the court is plaintiff's motion for summary judgment. Dkt. #32. Defendants have responded to plaintiff's motion and proposed findings of fact and proposed their own supplemental findings of fact. Although plaintiff was informed about defendants' response after he notified the court on January 27, 2020, that he had been released from prison, he did not file a reply brief or dispute defendants' supplemental proposed findings of fact.

I am denying plaintiff's motion for summary judgment. For the reasons below, I conclude that plaintiff has failed to produce sufficient evidence to establish the key elements of his Eighth Amendment claims and that defendants Huber and Wanty are entitled to

1

qualified immunity with respect to those claims. I decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims against defendants Huber, Wanty and Hulstein, so I will dismiss those claims without prejudice to plaintiff. Plaintiff can raise them in state court. Accordingly, this case will be closed.

From the parties' proposed findings of fact, I find the following facts to be undisputed unless otherwise noted.

UNDISPUTED FACTS

Although plaintiff Salvador Sanchez is no longer incarcerated, at all times relevant to this case, he was incarcerated at Jackson Correctional Institution, where defendants were all employed. Andrew Huber and Seth Wanty are correctional officers and Pauline Hulstein is a nurse clinician.

Plaintiff has post traumatic stress disorder for which he takes Prazosin to prevent nightmares. In November 2018, plaintiff was taking 2 milligrams of Prazosin daily. By December 13, 2018, he had titrated up to 10 milligrams a day. Health services unit staff told plaintiff that Prazosin causes dizziness or fainting when a person first starts it or changes dosages.

Department of Adult Institutions policy no. 500.80.11 provides that inmate patients must report in person to the assigned delivery location to take or refuse their medications at the ordered time. Correctional officers at Jackson receive pre-service medication delivery training and are required to complete annual medication delivery training.

2

On December 27, 2018, defendant Wanty was working second and third shifts, which ran from 2:30 p.m. on December 27 to 6:30 a.m. on December 28. Wanty was assigned to the bedtime medication pass on December 27, when plaintiff reported to the health services unit for his Prazosin. Wanty scanned plaintiff's identification card and pulled up the information about plaintiff's medication on the computer. However, Wanty could not find plaintiff's medication on the cart. Because there were several more inmates in line, Wanty asked plaintiff to wait at the back of the line so that he could finish the medication pass and then check the medication room for plaintiff's medication. He also told plaintiff that he would inform the health services unit if plaintiff preferred to come back the next day. Plaintiff was upset and left the area. (The parties dispute whether plaintiff told Wanty that not taking Prazosin caused him to have nightmares and placed him at risk for fainting after he restarted the medication.)

After Wanty finished the medication pass for all inmates, he checked for plaintiff's medication in the officer medication room and could not find it. Wanty informed an health services unit staff nurse about plaintiff's missing medication, and the nurse told Wanty that health services unit staff would look inside the health services unit medication storage room so the medication would be on the cart for the medication pass the next day.

On December 28, 2018, defendant Huber was working first and second shifts, which ran from 6:30 a.m. to 10:30 p.m. Huber was assigned the bedtime medication pass on December 28, but he does not recall speaking with plaintiff or passing him medication that evening. However, plaintiff's medication record shows that at around 8 p.m. on December

3

28, plaintiff went to the health services unit for Prazosin but the medication was not available and health services was notified. (The parties dispute whether plaintiff told Huber that not taking Prazosin caused him to have nightmares and placed him at risk for fainting after he restarted the medication.)

Plaintiff submitted health services requests on December 29, 2018 and January 3, 2019, asking about his Prazosin. A nurse responded on December 30 that "Prazosin has been on the Med Cart for bedtime. Unknown why you say you haven't gotten it."

Plaintiff received 10 milligrams of Prazosin at the bedtime medication pass on December 29, 2018. At approximately 8:30 a.m. on December 30, he fell while standing at a urinal and sustained a one-inch laceration on his right eyebrow. That same day, defendant Hulstein evaluated plaintiff's injury, cleaned the area above his right eye and applied two steri-strips after placing some benzoin to help the steri-strips stay in place. She ordered a refill of acetaminophen and told plaintiff to call staff or submit a health service request form if things got worse. Hulstein consulted with an on-call nurse practitioner who agreed with the treatment plan. (The parties dispute whether plaintiff agreed with this treatment plan. Defendants say that plaintiff agreed with it. Plaintiff says that he asked Hulstein to send him to the emergency room for stitches but she refused to do so.)

According to defendant Hulstein, steri-strips are normally applied when a wound is not deep and has straight versus jagged edges. Plaintiff's laceration met that criteria. Hulstein does not have the authority to override or alter orders issued by an advanced care provider and cannot write prescriptions or refer inmates to outside providers. Plaintiff

returned to the health services unit on December 31 to have new steri-strips applied, but they fell off after only a few hours.

On April 8, 2019, plaintiff served a notice of claim (no. 2019-03481) via certified mail on the attorney general under Wis. Stat. § 893.82.

OPINION

A. Summary Judgment Standard

Summary judgment is appropriate only if the moving party—in this case plaintiff—can demonstrate with admissible evidence "that there is no genuine issue as to any material fact and [he] is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "material fact" is one identified by the substantive law as affecting the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Bunn v. Khoury Enterprises, Inc., 753 F.3d 676, 681 (7th Cir. 2014). A "genuine issue" exists with respect to a material fact when "the evidence is such that a reasonable jury could return a verdict for the non-moving party," or in this case defendants. Id. "On the other hand, where the factual record taken as a whole could not lead a rational trier of fact to find for defendants, there is nothing for a jury to do." Bunn, 753 F.3d at 682 (citing Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In determining whether a genuine issue of material fact exists, the court views the record in the light most favorable to defendants. Anderson, 477 U.S. at 255.

5

B. <u>Eighth Amendment Claims Against Defendants Huber and Wanty</u>

Plaintiff contends that defendants Huber and Wanty violated his rights under the Eighth Amendment and state negligence law by failing to insure that he received his medication on two different occasions. To prevail on an Eighth Amendment deliberate indifference claim, plaintiff must show that defendants were aware that he was being subjected to a substantial risk of serious harm but defendants were either "deliberately indifferent" or consciously refused to take reasonable measures to prevent the harm. <u>Forbes v. Edgar</u>, 112 F.3d 262, 266 (7th Cir. 1997). Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. <u>Vance v. Peters</u>, 97 F.3d 987, 992 (7th Cir. 1996).

The parties do not dispute that plaintiff had a serious medical condition for which he needed medication and that Huber failed to locate his medication on December 28, 2018 and Wanty failed to locate it again on December 29. However, a reasonable jury would not necessarily conclude from the undisputed facts in this case that defendants Huber and Wanty were deliberately indifferent to a serious risk of harm to plaintiff.

The parties dispute whether Huber and Wanty knew that plaintiff would suffer adverse side effects if he did not take his medication. (Although plaintiff argues in his brief that Huber and Wanty refused to let him talk with a nurse after they could not locate his medication, he has not proposed any finding of fact or presented admissible evidence in support of this contention.) Regardless what defendants may have known about plaintiff's health condition and medication, plaintiff has not presented evidence showing that either

6

defendant intentionally or consciously withheld his medication, had any role in the medication's being missing or failed to take reasonable measures to locate it. It is undisputed that Wanty made an attempt to search for the missing medication on the cart and in a nearby storage area and that both officers notified the health services unit as soon as they discovered that the medication was not on the cart. Considering these facts, a reasonable jury could conclude that Huber and Wanty did not act with deliberate indifference to plaintiff's serious medical need and took reasonable measures to prevent harm to plaintiff by notifying health care professionals who could follow up with plaintiff if necessary. Accordingly, plaintiff is not entitled to summary judgment with respect to his Eighth Amendment claims against defendants Huber and Wanty.

In addition, defendants argue that even if plaintiff had shown that a reasonable jury could conclude that Huber's and Wanty's actions qualified as deliberate indifference, they are entitled to qualified immunity. I agree. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). Qualified immunity is an affirmative defense, but the plaintiff carries the burden of defeating it once it is raised. Rabin v. Flynn, 725 F.3d 628, 632 (7th Cir. 2013). To defeat the qualified immunity defense, plaintiff must show that: (1) defendants violated a constitutional right; and (2) the right was clearly established at the time so that it would have been clear to a reasonable official that his or her conduct was unlawful in the situation. Saucier v. Katz, 533 U.S. 194, 201-02 (2001); Ewell v. Toney,

853 F.3d 911, 919 (7th Cir. 2017).

Plaintiff has not responded to defendants' qualified immunity argument or otherwise identified any legal authority indicating that a correctional officer violates the Eighth Amendment by failing to locate an inmate's medication on one occasion under circumstances similar to those in this case. In his supporting brief, plaintiff cites Thomas v. Wall, case. no. 16-cv-166-bbc, 2016 WL 3006834, *1 (W.D. Wis. May 23, 2016), in which the plaintiff alleged that the defendant gave him the wrong medication, making "no attempt to verify that he was giving plaintiff the correct medication, in violation of prison policy." However, in that case, I found only that plaintiff's allegations were sufficient at the screening stage to allow him to proceed on an Eighth Amendment deliberate indifference claim.

Courts addressing claims involving a one-time mistake in dispensing an inmate's medication, resulting which resulted in only temporary side effects not requiring significant treatment, have not found liability under the Eighth Amendment. E.g., Zentmeyer v. Kendall County, Illinois, 220 F.3d 805, 812 (7th Cir. 2000) (forgetting doses of medicine for plaintiff's ear infection "without additional exacerbating hardships" is not deliberate indifference ); Blake v. Warner, case no. 17-cv-220-bbc, 2018 Wl 3075832, at *4 (W.D. Wis. Jun. 21, 2018) (failure to renew prescription and later order it from local pharmacy was mistake that did not rise to level of deliberate indifference); Richmond v. Dart, 2012 WL 567245, at *2 (N.D. Ill. Feb. 17, 2012) ("The officer, the nurse—and Plaintiff himself, for that matter—all may have been negligent for failing to confirm that the medication in

8

question was being taken by the right inmate. But neither negligence nor gross negligence implicates the Constitution."); Davis v. Baker, 2010 WL 779502 (S.D. Ind. Feb. 26, 2010) (granting summary judgment to defendant on claim that defendant handed inmate wrong medication one time).

Plaintiff avers that he told Wanty and Huber that missing his medication may cause him dizziness and fainting during subsequent dosage increases and place him at risk of traumatic nightmares on each night he went without it. Although dizziness, fainting and nightmares may be unpleasant and even result in a fall (as in this case), no reasonable officer with the same information would think that contacting the health services unit was not a sufficient response or that one or two missed doses would be equivalent to criminal recklessness. Brown v. Cascadden, case no. 18-cv-483-bbc, 2019 WL 6174365 (W.D. Wis. Nov. 20, 2019) (temporary symptoms of shakiness, lightheadedness and diarrhea did not place plaintiff at substantial risk of serious harm, even though plaintiff later fell because he was lightheaded). Accordingly, plaintiff's Eighth Amendment claims against Huber and Wanty will be dismissed on the grounds of qualified immunity.

C. State Negligence Claims

Plaintiff is proceeding on state law negligence claims against all three defendants. Defendants contend that plaintiff failed to comply with the notice of claim statute, Wis. Stat. § 893.82, with respect to his state law claim against Wanty because he failed to identify Wanty by name, alleging only that "C.O. John Doe" refused to give him his medication on

9

December 27, 2018. However, defendants have failed to file a copy of plaintiff's notice of claim so that I may verify this fact. Defendants' exhibit #1008, entitled "notice of claim," is actually a copy of exhibit #1005, which are plaintiff's medical records. Dkt. #59-1. However, I am dismissing plaintiff's state law claims on another ground.

The general rule is that federal courts should relinquish jurisdiction over state law claims if all federal claims are resolved before trial. 28 U.S.C. § 1367(c)(3); Burritt v. Ditlefsen, 807 F.3d 239, 252 (7th Cir. 2015). In this instance, I will decline to exercise supplemental jurisdiction over plaintiff's state law claims because I have dismissed all of plaintiff's federal claims. Plaintiff may refile his negligence claims in state court, subject to the applicable Wisconsin statute of limitations.

ORDER

IT IS ORDERED that

1. Plaintiff Salvador Sanchez's motion for summary judgment, dkt. #32, is DENIED.

2. Plaintiff's Eighth Amendment claims against defendants Andrew Huber and Seth Wanty is DISMISSED on the grounds of qualified immunity.

3. Plaintiff's state law negligence claims are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

4. The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 24th day of February, 2020.

BY THE COURT:
/s/

_____
BARBARA B. CRABB
District Judge